In the Matter of CHENANGO AND UNADILLA TELEPHONE CORPORATION et al., Petitioners, *v.* PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK et al., Respondents.

Third Department, February 27, 1975.

*Huber, Magill, Lawrence & Farrell* (*Norman Abell* and *Frank J. Miller* of counsel), for petitioners.

*Peter H. Schiff* and *Mark S. Kahan* for Public Service Commission, respondent.

*George E. Ashley* (*Mark D. Luftig* and *Keith E. McClintock* of counsel), for New York Telephone Company, respondent.

*Nixon, Hargrave, Devans & Doyle* (*Michael T. Tomaino* and *Michael R. Wolford* of counsel), for Rochester Telephone Corporation, respondent.

*Delbert K. Wnorowski* (*John Robert Jones* and *Richard M. Cahill* of counsel), for General Telephone Company of Upstate New York, Inc., respondent.

*LeBoeuf, Lamb, Leiby & Macrae* (*Peter Garam* and *Taylor R. Briggs* of counsel), for Midstate Telephone Co., Inc. and another, respondents.

*Williams, Micale & Ryan* (*Frank J. Micale* and *Frederick J. Micale* of counsel), for Highland Telephone Company, respondent.

KANE, J. In 1972 the respondent Public Service Commission (hereinafter Commission) initiated a proceeding to investigate the division of intrastate toll revenues among certain telephone utilities. Petitioners, Chenango and Unadilla Telephone Corporation (hereinafter C & U) and Iroquois Telephone Corporation (hereinafter Iroquois), became parties to this proceeding along with New York Telephone Company (hereinafter NY Tel), Rochester Telephone Corporation, General Telephone Company of Upstate New York, Inc., Midstate Telephone Company, Inc., Jamestown Telephone Corporation and Highland Telephone Company. On November 16, 1973, following a lengthy hearing, the Public Service Commission ordered the foregoing telephone companies to establish and participate in a pooling arrangement to divide such revenues beginning in 1974, but decreed that prior unresolved " settlements " of these tolls should be " premised on the last settlement procedure agreed upon." NY Tel requested a clarification of that order and, on February 1, 1974, the Commission further declared that, absent some computational error, the payments made by NY Tel during the disputed period as such settlements were to be regarded as final among the parties.

Telephone service is provided by a number of concerns and calls made wholly within the State often pass through the lines and equipment of two or more telephone companies. Long ago the Commission deemed it advisable that the toll charges for such intrastate service be made uniform throughout the State and all parties here involved agree with that proposition. NY Tel is the largest supplier of this service and the desired uniformity has been most practically achieved by fixing the tolls for intrastate calls at the levels established for that utility. The remaining so-called "independent" telephone companies concur in these rates when filing their respective rate schedules which the Commission then approves as to that category of service. Some procedure is then required to ratably apportion the revenues derived from this intrastate toll service. Again because of its relative size, NY Tel has historically carried out the mechanics of dividing these revenues by periodically arriving at separate agreements, called settlements, with the independents. Most companies employ a nationwide average schedule to reach accord with NY Tel. Under this method of settling, the costs of several telephone companies are studied from which a schedule of appropriate net payments, related to the average revenue per message for the particular type of service, can be calculated and applied. Another settlement method involves the preparation of an individualized study whereby an independent company measures its own particular costs as a basis for separate negotiation with NY Tel. Users of the average schedule are apparently satisfied with this arrangement and it remains unaffected by the Commission's determinations. However, those utilities which chose the individualized cost study basis of intrastate settlement ran into difficulty with NY Tel beginning in 1969 when that utility changed its former practices and no longer offered them what amounted to a guaranteed rate of return on their intrastate business.

Nevertheless, final accord was ultimately reached with General Telephone Company of Upstate New York, Inc. for all periods preceding the Commission's declaration of the new settlement policy. C & U arrived at a final settlement through June of 1970 and Iroquois succeeded in its negotiations with NY Tel through 1971. The balance of the respondent utilities fared somewhat differently, but none finally settled after 1971 and some were unable to conclude an agreement even for that year. To maintain necessary patterns of cash flow, however, NY Tel did make payments to each of these concerns represent-

ing some division of the intrastate toll revenues obtained during the respective periods of dispute.

Although various theories were propounded by the telephone companies involved and the Commission's own staff to produce an acceptable intrastate toll revenue settlement solution, the parties do not now contest the validity of the pooling arrangement finally adopted by the Commission as the appropriate device to be applied in future periods. The only disagreement and the only issue presented in this proceeding concerns the Commission's action in declaring final the payments made to petitioners by NY Tel as the division of intrastate toll revenues during the period in which they failed to reach agreement.

Preliminarily, some of the parties respondent object that the instant petition is time-barred by reason of CPLR 217 in that the proceeding was not commenced within four months of the Commission's November 16, 1973 order. It seems clear, however, that petitioners had no complaint until the Commission issued its self-described clarification order on February 1, 1974 and they discovered that those prior payments were to be regarded as final. Under a reasonable view of the circumstances, petitioners were free until then to persist in their former beliefs concerning the interpretation which should be placed on the earlier Commission language. Since this proceeding was concededly commenced in a timely fashion after February 1, 1974, respondents' contentions in this connection must be rejected.

Petitioners' argument on the merits is that the Commission's action restricts the proper division of intrastate toll revenues for the periods in which no agreement was reached with NY Tel and produces an unfair and discriminatory allocation of such revenues among the involved companies. They specifically contend that the prior payments were never intended to become final amounts and point out that they would have received more money from NY Tel had the pooling method been applied to that period or had they at least been permitted to update their cost studies as "the last settlement procedure agreed upon."

We conclude that petitioners' claims do not present a sufficient basis to warrant interference with the Commission's action. The scope of our review is such that we may not judge the wisdom of that action, but are bound to accept the Commission's determination if it is supported by substantial evidence and is not arbitrary or in violation of lawful procedures (CPLR 7803; *People ex rel. Consolidated Water Co.* v. *Maltbie,* 275

N. Y. 357; *Matter of City of New York* v. *Public Serv. Comm. of State of N. Y.,* 17 A D 2d 581). Accordingly, it is said that the challenged action may not be disturbed if it has a rational or reasonable basis (*Matter of Campo Corp.* v. *Feinberg,* 279 App. Div. 302, affd. 303 N. Y. 995).

Here, the lengthy hearings developed several highly technical alternative methods of solving the settlement impasse which had arisen. Each had a rational basis founded on substantial evidence and each was carefully considered by the Commission. Leaving the parties in essentially the same position in which they were found was but one choice discussed as appropriate for the division of revenues already made up to that point. It matters little whether petitioners would have received more or less money if some other choice had been accepted by the Commission for, at best, such financial differences would only present some evidence of arbitrariness. Similarly, it is not particularly significant that the Commission decided upon one method for future periods and yet selected another procedure to resolve the division of revenues in the disputed period. That distinction merely recognized the relative difficulties involved in applying one of several rational choices to the problem at hand. Since it was obviously impossible to achieve perfect equality among the parties, the Commission was free to consider what impact the available alternatives would have on these telephone companies as a whole and then make such decision as it saw fit under the circumstances.

Other respondent telephone companies could presumably make arguments identical with those presented by these petitioners if they chose to compare the action taken by the Commission with some other method more favorable to their own best monetary advantage. When considering the interests of all parties, however, we simply cannot say that the financial differences here alleged by petitioners were so great as to rob the Commission's ultimate determination of rationality or render it arbitrary. Upon this disposition of the matter we find it unnecessary to reach the issues raised by some of the parties respondent in support of their arguments to dismiss this proceeding.

The determination should be confirmed, and the petition dismissed, without costs.

HERLIHY, P. J., GREENBLOTT, MAIN and LARKIN, JJ., concur.

Determination confirmed, and petition dismissed, without costs.