In the Matter of TELE/RESOURCES, INC., et al., Petitioners, v PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK et al., Respondents.

Third Department, July 14, 1977

*Cohn & Marks (Keith J. Roland* and *Bruce P. Saypol* of counsel), for petitioners.

*Peter H. Schiff (John C. Crary* of counsel), for Public Service Commission, respondent.

*Joseph J. Strelkoff, George E. Ashley* and *Gerald M. Oscar* for New York Telephone Company, respondent.

KANE, J. P. The petitioning corporations sell and maintain telephone systems in direct competition with the respondent New York Telephone Company (NYT). When NYT filed revised tariffs with the respondent Public Service Commission (PSC) that would principally affect certain of its series 500 private branch exchanges (PBX), petitioners intervened and contested the offerings. Extensive hearings were conducted on various dates between January and March of 1975 and, on July 10, 1975, the hearing examiner forwarded his recommendations to the PSC. They generally favored the NYT proposal. The PSC issued its decision and opinion on December 15, 1975, making several modifications in the examiner's report, and denied petitioner's application for a rehearing on May 10, 1976. Petitioners then instituted this proceeding in September

of 1976 to review the PSC's determination and seek to have it annulled on several grounds.

The tariffs approved in this matter only apply to a portion of the PBX services offered by NYT to its customers and even NYT's entire PBX business represents but a part of its diverse communications enterprise. Nevertheless, the instant proceeding is significant for it involves one of the few areas in which NYT is subject to a competitive challenge and it presents a unique approach to rate-making not encountered in prior cases. In 1968 subscribers were allowed to attach their own terminal equipment to telephone networks *(Matter of Use of Carterfone Device in Message Toll Tel. Serv.,* 13 FCC 2d 420). PBX service, as its name implies, entails the installation and care of sophisticated communications equipment to fulfill commercial needs. Petitioners, having entered this market, are upset by the present determination because it authorizes the use of a two tier rate system by NYT that results in charges lower than those formerly in effect for the same types of PBX service. Their arguments attack these rates as being theoretically invalid, noncompensatory, discriminatory, and anticompetitive. We have carefully examined all of these varied contentions and conclude that the determination of the PSC should be confirmed.

Under traditional rate-making procedures, the single monthly charge established for service remains subject to an over-all revision and payments cease only when service is discontinued. With the two-tier approach sanctioned herein for certain kinds of PBX service, the capital-cost components of a subscriber's equipment are translated into a monthly "A" rate which is fixed and must be paid for a predetermined length of time—in this case six or seven years. In addition, NYT's operational expenses are ascertained to arrive at a monthly "B" rate which is flexible but paid only during the period such service is actually retained by the customer. At the heart of this novel methodology is the assumption that NYT will be fully reimbursed for the capital-related costs of the specific PBX equipment used by its individual subscribers. The "A" payment period is shorter than the estimated 15-year service life of the equipment, and the associated rate gives recognition to accelerated depreciation as well as the present worth of money. Account averages are usually employed in calculating NYT's equipment investment in the customary setting, but here the adjusted net investment for the specific

types of equipment involved was computed to develop the corresponding "A" rate. Because this measurement generates a lower investment base figure, the resulting "A" rate and the uncontested "B" rate combine to produce a lower total monthly charge than would be derived from conventional rate-making processes.

Although petitioners questioned several aspects of the "A" rate formulation at the hearing and before the PSC, their abiding claim in this proceeding is that the manner of assessing early termination charges in connection with the "A" rate is so flawed that it destroys the assumption of full capital recovery upon which two tier pricing is founded or, stated somewhat differently, results in a tariff which is non-compensatory. We disagree. Originally, NYT suggested that the termination charge for those who discontinued service before the "A" period ended be equal to the present value of the remaining payments less the salvage value of the equipment as determined by it. The PSC properly concurred with the examiner that leaving the monetary amount of this credit to the judgment of NYT would create a potential for anticompetitive abuse and, accordingly, it directed NYT to submit reasonable standards for this purpose to be incorporated into the tariff. Those approved standards have not been included in the record, but, on the other hand, neither have petitioners substantiated their allegation that the reuse credit formula will jeopardize the compensatory sufficiency of the approved tariffs. From an abstract standpoint, it certainly seems logical that a full capital recovery can be achieved through a payment partly in cash and the balance by way of a salvage value credit, and petitioners have not demonstrated why this will not work under NYT's compliance filings.

Petitioners also argue that the underestimation of several "A" rate cost factors yields final rates for certain series 500 PBX services which are inadequate. Without detailing each of petitioners' specifications under this heading, a review of the record persuades us that the PSC did not exclude any relevant cost data from its evaluation. Its judgment of the proper amount for various cost components could be mistaken, yet it is not our commission to overturn the result so long as the ultimate decision of that body is rational and possesses substantial evidentiary support (see *Matter of St. Lawrence Gas Co. v Public Serv. Comm. of State of N. Y.*, 54 AD2d 815). This record plainly contains such evidence and we cannot say that

the conclusions drawn by the PSC in connection with the adequacy of the "A" rate reflect anything less than a conscientious and well-reasoned opinion on the subject. Petitioners' objection that the two-tier ratings approved herein will be subsidized by NYT's monoply revenues, admittedly a legitimate concern, simply lacks factual support; the compensatory sufficiency of those rates stands on a separately established footing.

Next, we reject petitioners' assertion that the two-tier pricing of certain PBX services unlawfully discriminates against other telephone subscribers. The novelty of the approved schedules does not rob them of their inherent cost justification which, as noted, stems from an evaluation of the identifiable capital and operating expenses of particular types of equipment. Traditional rate-making views a broader range of equipment investment and rests on an equally valid, though less specific, basis. Thus, the differentiation in charges under these two systems may be tolerated for neither exacts an unjust or unreasonable payment from the customer. Convential subscribers stop paying for their service whenever they choose to discontinue it, whereas two-tier customers are obliged to complete the stream of "A" rate payments should they decide to terminate service before their six or seven year enlistment expires. Accordingly, neither group has taken service under the same or substantially the same circumstances or conditions (Public Service Law, § 91, subd 2; § 92, subd 2), and neither has been unduly prejudiced or disadvantaged in any respect (Public Service Law, § 91, subd 3). For the same reasons, we likewise find nothing discriminatory in allowing existing series 200 and 300 dial communication system customers to continue at their present schedules or to rerate to one of the series 500 PBX two-tier tariffs. Lastly, the creation of subsequent vintages for "A" rate purposes as investment costs change will serve to protect the rate sufficiency of that tier and future subscribers will be taking their service under updated conditions.

Petitioners further urge that the two-tier tariffs constitute an exclusionary pricing technique by NYT in violation of antitrust laws. However, the PSC is not bound to entertain or ignore any particular factor in discharging its primary responsibility to determine rates that are just and reasonable (Matter of New York Tel. Co. v Public Serv. Comm. of State of N. Y., 309 NY 569; Matter of Consolidated Edison Co. of N. Y.

*v New York State Public Serv. Comm.,* 53 AD2d 131, mot for lv to app den 40 NY2d 803). Nonetheless, while it is not designed to be an enforcer of the anti-trust laws, the PSC carefully considered the competitive effects such pricing might have before rendering its decision. NYT's dominant standing in the PBX market was weighed against the customer advantages offered by this rating plan. The PSC was well aware of the impact its determination could have on that market and took several steps to avoid or minimize any anti-competitive consequences that might arise. Moreover, these schedules will be monitored by the PSC and its continuing regulatory authority to correct predatory practices, should they develop, may not be overlooked. Petitioners also rely on the recent Massachusetts case of *New England Tel. & Tel. Co. v Department of Public Utilities* (— Mass — [June 3, 1977]) in support of their position, but we fail to see how it advances their cause. Although a two-tier tariff system was disapproved, we cannot say that the facts involved therein were the same as those presented in this proceeding. Even if we could make such an assumption, however, a fundamental distinction remains which deserves emphasis; the rating system proposed in that case was rejected initially by the administrative agency. In affirming its judgment, the court did not decide the matter *de novo.* Our standard for reviewing the instant determination may be somewhat different, but it is similarly restricted in scope. Having found substantial evidence to support the determination and concluded that it is not arbitrary, capricious or illegal, we are not free to substitute our judgment for that of the PSC (cf. *Matter of Lefkowitz v Public Serv. Comm.,* 50 AD2d 338, affd 40 NY2d 1047). Two-tier pricing is a technical concept which has engendered a great deal of controversy. We are told that the principle has been approved in a number of jurisdictions, but it is undoubtedly true that some risk accompanies its implementation. However, since we are satisfied that it has a rational basis, our inquiry is at an end *(Matter of Chenango & Unadilla Tel. Corp. v Public Serv. Comm. of State of N. Y.,* 46 AD2d 601; *Matter of City of New York v Public Serv. Comm. of State of N. Y.,* 17 AD2d 581, mot for lv to app den 13 NY2d 594).

The determination should be confirmed, and the petition dismissed, without costs.

MAHONEY, MAIN, LARKIN and HERLIHY, JJ., concur.

Determination confirmed, and petition dismissed, without costs.