OPINION OF THE COURT
Roger J. Miner, J.
Petitioners are companies engaged in the business of selling and servicing or manufacturing telephone interconnection and terminal equipment. They seek to prevent respondent Rochester Telephone Corporation (Rochester) from selling installed *319 terminal equipment and on-premises wiring pursuant to a tariff filed by Rochester and approved by respondent Public Service Commission (commission).
As the result of recent decisions of Federal and State regulatory agencies, telephone companies now must allow the interconnection of customer-provided equipment to the telephone network. Although the regulated telephone companies formerly provided terminal equipment on a lease basis to their subscribers, they must now compete with independent manufacturers and suppliers in this area. As a consequence, the telephone companies have determined to offer for sale to their subscribers the terminal equipment already installed and in place at the subscribers’ premises.
Rochester, a regulated telephone company, has filed a tariff providing for the sale to its customers of in-place terminal equipment consisting of switchboards, button telephones and station wire at a price described as follows: "The price for such systems shall be on a negotiated basis but in no event will it be below net book value.” In its order issued June 28, 1977, the commission approved the tariff, confirming net book value as a minimum pricing standard but establishing the principle that the actual prices should reflect marginal opportunity cost. The commission defined this cost as follows: "the marginal opportunity cost to the company in selling the equipment is the present or capitalized value of the equipment lease payments that it could expect from a new customer, less any refurbishment costs it would have to incur in order to make the equipment acceptable for leasing.”
Petitioners claim that the tariff allows Rochester to charge a noncompensatory and predatory price, arguing that overhead generally associated with product sales would be excluded in the pricing and the burden shifted to subscribers of basic services. Petitioners also contend that the tariff allows Rochester to discriminate unreasonably among its equally-situated customers and that the tariff lacks the specificity required by statute.
In the opinion of the court, there was a rational basis for the tariff approved by the commissioner and the contentions of petitioners must be rejected. (Matter of Pell v Board of Educ., 34 NY2d 222.) According to the commission, the provisions of subdivision 2 of section 99 of the Public Service Law are applicable here and considerable weight must be given to the commission’s interpretation of the statute under which it *320 functions. (Matter of Howard v Wyman, 28 NY2d 434.) Involved here are proposed transfers of parts of the "works or system” of Rochester and not the provision of telephone services, as contended by petitioners. (See Public Service law, §§ 91, 92.) The realization of revenue from the sale of in-place systems will benefit subscribers of basic services in instances where Rochester’s telephone equipment would have to be scrapped upon being replaced by equipment furnished by petitioners or others.
Moreover, the commission apparently considered the competitive effects of the pricing specified in the tariff and concluded that the tariff was not discriminatory or predatory. (Matter of Tele/Resources, Inc. v Public Serv. Comm., 58 AD2d 406.) The sale of equipment on a negotiated basis is not per se discriminatory or predatory, considering the standards established by the commission and its duty to monitor the application of the tariff.
Petitioners’ claim of denial of procedural due process also is rejected.
Submit judgment for respondents.