In the Matter of GARY EXLEY et al., Appellants, v VILLAGE OF ENDICOTT et al., Respondents.

Third Department, April 17, 1980

### APPEARANCES OF COUNSEL

*Keith J. Roland (Bruce P. Saypol* of counsel), for appellants.

*Hinman, Howard & Katell (George E. Ashley* and *Keith E. McClintock* of counsel), for New York Telephone Company, respondent.

### OPINION OF THE COURT

MAHONEY, P. J.

The facts are largely undisputed. At some point in 1978 the corporate petitioner, which sells interconnect telephone systems in competition with the New York Telephone Company (NYT), learned that the Village of Endicott was going to replace its existing telephone system. Petitioner requested that it be permitted to submit a bid. The village, without developing specifications or advertising for bids, signed a contract with NYT for installation and service of a "Dimension" PBX telephone system pursuant to a two-tier rate contract. Under the two-tier approach for certain kinds of PBX service, including the "Dimension" system, the capital-cost components of the equipment supplied a subscriber are translated into a monthly "A" rate, which is fixed and must be paid for a predetermined length of time, said time span to be selected by the subscriber. In addition, NYT's operational expenses are ascertained to arrive at a monthly "B" rate, which is comparable to the ordinary monthly rate charged all customers and is paid during the life of the service. The "A" rate reflects an actuarial accounting of NYT's equipment investment, as affected by accelerated depreciation, so as to determine what fixed rate payable over a stated term will return the capital costs of such equipment. Because this type of capital cost measurement generates a lower investment base type figure, the resulting "A" rate and the "B" rate combine to produce a lower total monthly charge than would result from conventional rate-making processes (see *Matter of Tele/Resources v Public Serv. Comm. of State of N. Y.,* 58 AD2d 406, 408-409, mot for lv to app den 43 NY2d 647).

Petitioners, 753 Harry L. Drive Corporation, a vendor of

competitive PBX telephonic equipment, and Gary Exley, a taxpayer of the Village of Endicott, commenced this proceeding to void the existing contractual arrangement between the village and NYT, and, further, to compel the village to comply with the competitive bidding requirement of section 103 of the General Municipal Law. Special Term concluded that the contractual arrangement between NYT and the village was a lease and not a "purchase contract" or a "contract for public work" within the meaning of section 103. Accordingly, Special Term dismissed the petition.

Section 103 of the General Municipal Law states: "1. Except as otherwise expressly provided * * * all *contracts for public work* * * * and all *purchase contracts* * * * shall be awarded * * * to the lowest responsible bidder furnishing the required security after advertisement for sealed bids in the manner provided by this section". (Emphasis supplied.) Since neither "*purchase contracts*" nor "contracts for public work" is defined in the statute, we must assign reasonable meanings to these terms as they are understood and used by public corporations and vendors who supply goods and services to such public bodies. We perceive the meaning of "purchase contracts", as used in section 103, to be an agreement between a political subdivision of the State and a vendor, supported by consideration in the nature of public moneys, for the purchase of goods, equipment, work or services in furtherance of an end that will inure to the benefit of the taxpayer of the political subdivision involved.

██ Applying that definition to the contract under attack herein necessarily compels the conclusion that the agreement violates the express terms of section 103, as that section is read in conjunction with section 100-a of the same law, which, in pertinent part, states: "It is hereby declared to be the policy of this state that this article shall be construed in the negotiation of contracts for public works and public purchases to which political subdivisions * * * [are] a party so as to assure the prudent and economical use of public moneys for the benefit of all the inhabitants of the state and to facilitate the acquisition of facilities and commodities of maximum quality at the lowest possible cost." We agree with the comptroller's view that "[i]f the lease is * * * a lease for the probable life of the property * * * the effect of which is to render the agreement a purchase, it will be viewed as a mere subterfuge to circumvent competitive bidding and/or provi-

sions of the Local Finance Law, and will not be considered a lease, but a purchase" (Opns St Comp No. 70-325, 1970; accord Opns St Comp No. 78-574, 1978; Opns St Comp No. 76-1035, 1976). Since section 11.00 (subd a, par 25) of the Local Finance Law assigns a 10-year period of probable usefulness for telephonic systems purchased by municipalities, the contract under review, which is for a similar length of time, must be considered a "purchase contract" and not a lease. That provision of the Local Finance Law, although developed for different purposes,* is useful in this case since it represents a legislative expression of the useful life of telephonic equipment. Consequently, the recitation in the subject contract that title remains in NYT at the end of the "A" rate period is illusory, there being no useful life remaining that can be subject to meaningful ownership. We, therefore, conclude that where, as here, an agreement between a municipal corporation and a vendor for the use by the municipality of property or equipment for a stated period of time is termed a lease, the designation is a meaningless misnomer when the property or equipment is totally consumed in terms of its probable life during such stated period. Such an agreement is a "purchase contract" within the meaning and intent of section 103 of the General Municipal Law.

Moreover, our decision that the agreement between NYT and the village was a "purchase contract" requiring competitive bidding need not rest on the fortuitous selection by the village of an "A" rate period that is identical to the statutory period of probable usefulness. We are aware that a contractual relationship between NYT and other governmental entities may exist wherein the "A" rate period differs from the probable life of the equipment, and, further, that even under the present arrangement the Village of Endicott may terminate service before expiration of the "A" rate period. While these perceptions may suggest that municipal customers paying for service under the two-tier rate system are leasing rather than purchasing their equipment, they fall short of proving that legal conclusion upon examination of the consequences of such a happening.

---

* The State Constitution prohibits municipal corporations and school districts from contracting indebtedness for longer than the period of probable usefulness of the object or purpose for which the debt is to be contracted (NY Const, art VIII, § 2). Pursuant to constitutional authority, the Legislature has established the periods of probable usefulness of many objects and purposes (Local Finance Law, § 11.00).

In those instances where the "A" rate period is shorter than the equipment's useful life, the subscriber will have paid a higher "A" rate than would have been required had both periods been equal. Regardless of whether the period selected by the customer for making "A" rate payments is shorter or longer than the useful life span, NYT will, by the very nature of the "A" rate, have recovered the full capital cost of the equipment utilized. Thus, we do not believe that a two-tier customer can be said to have leased his telephonic system upon entering into a contract which obligates him to pay for that equipment's entire capital cost.

This conclusion is not altered by the fact that customers may terminate their service prior to the end of the "A" period they selected. In such an eventuality, a termination charge is assessed against the subscriber. That charge is equal to the present value of the remaining stream of "A" rate payments less the salvage value of the equipment. NYT is thus assured of recovering its full capital cost even in those situations where service is prematurely terminated. "[I]t certainly seems logical that a full capital recovery can be achieved through a payment partly in cash and the balance by way of a salvage value credit" *(Matter of Tele/Resources v Public Serv. Comm. of State of N. Y.,* 58 AD2d 406, 409, *supra).*

Also, we do not feel that NYT's right to reclaim its equipment at any time, together with its obligation to pay taxes and perform maintenance on the equipment, are of decisional consequence. NYT, pursuant to Public Service Commision regulations, cannot reclaim equipment or terminate service without just cause, usually the nonpayment of rates or improper use of equipment. The obligation of payment of taxes and maintenance of equipment are often the subject of agreements between contracting parties and are not themselves per se indicia of ownership.

Since we have found the subject agreement to be a "purchase contract", we need not reach the issue of whether it is also a "contract for public work".

Finally, in the absence of a "common fund" created by petitioners' efforts in this proceeding, there can be no award of counsel fees (see *Gerzof v Sweeney,* 22 NY2d 297; *New York Public Interest Research Group v Carey,* 59 AD2d 172, 177, revd on other grounds 42 NY2d 527).

The order and judgment should be reversed, on the law and the facts, with costs; the petition reinstated and declaration

made that the contract between the Village of Endicott and the New York Telephone Company for installation of a "Dimension" PBX telephonic system is void.

GREENBLOTT, MAIN, MIKOLL and CASEY, JJ., concur.

Order and judgment reversed, on the law and the facts, with costs; petition reinstated and declaration made that the contract between the Village of Endicott and the New York Telephone Company for installation of a "Dimension" PBX telephonic system is void.