In the Matter of UNITED STATES TUBE & FOUNDRY COMPANY, INC., Petitioner, against BENJAMIN F. FEINBERG et al., Constituting the Public Service Commission of the State of New York, et al., Respondents.

Third Department, April 23, 1959.

*Koblenz & Koblenz (Edmund A. Koblenz* and *A. Abba Koblenz* of counsel), for petitioner.

*Kent H. Brown, George H. Kenny* and *Martin L. Barr* for Public Service Commission, respondent.

*Whitman, Ransom & Coulson (Arthur L. Webber* and *Dugald C. Brown* of counsel), for Consolidated Edison Company of New York, Inc., respondent.

Foster, P. J. In this proceeding under article 78 of the Civil Practice Act, petitioner seeks a review and annulment of a determination of the Public Service Commission that dismissed, after hearings, a complaint by petitioner of undue discrimination on the part of the Consolidated Edison Company of New York (hereafter called Edison) for a refusal to furnish non-

standard 265/460 volt electric service to petitioner's manufacturing plant at Nos. 494–504 Wortman Avenue, Brooklyn, New York.

In addition to the claim of discrimination petitioner attacks the validity of a part of the tariff schedule filed by Edison with the Public Service Commission.

Insofar as pertinent the tariff schedule reads as follows:

"The Company has adopted as its standard (hereinafter referred to as the 'standard system') the three phase, four wire, alternating current system of distribution, at approximately 60 cycles and 120 and 208 volts, *in the interest of a standardized, unified and economical system for its Customers as a whole.* As a consequence, the Company is extending the standard system and is gradually converting its non-standard distribution systems to the standard system.

\* \* \*

"*Standard service will be designated for service to new buildings located in an area in which the standard system has been established* except as otherwise provided under Paragraph (c) below.

\* \* \*

"*Standard service will be designated for service in all cases for which no specific provision* for the designation of non-standard service is hereinafter set forth.

"(c) Three Phase, 265/460 Volts: Three phase, four wire, 265/460 volt service will be designated by the Company, subject to the Customer's concurrence, for supply to buildings *when warranted by the magnitude or location of the load or other physical conditions.*

"Where such service is supplied to a new building, no service of other characteristics will thereafter be introduced into the building." (Emphasis supplied.)

Petitioner's attack on the validity of the foregoing tariff schedule is based on the general principle that a rate schedule should be definite (*Matter of Leitner* v. *New York Tel. Co.,* 277 N. Y. 180). Its complaint is specifically directed to paragraph (c) of the foregoing schedule which provides for 265/460 volt service "when warranted by the magnitude or location of the load or other physical conditions". It is evident that the application of the language quoted is a matter of engineering judgment on the part of the commission and Edison, initially by Edison and subject to approval or disapproval by the commission. Petitioner argues therefore that the schedule in this respect creates no clear-cut standards upon which nonstandard service can be granted evenly and fairly to those applying for

it. It says in effect that if engineering judgment is to be involved the principles thereof must be set forth in detail; that the schedule sets forth merely vague and indefinite standards, and hence is invalid. It is difficult to see how this argument helps petitioner, for if that part of the tariff schedule is found invalid then there is no provision whatever for nonstandard service. But except for the general principle that a rate schedule should be definite, and we think that principle refers principally to rates, petitioner offers no authority to sustain its position on this phase of the controversy. It would seem a matter of common sense that the installation of nonstandard patterns of service must necessarily involve engineering judgment which cannot be precisely predicted for each and every special case under a general tariff schedule.

Petitioner's allegation of discrimination is predicated upon the fact that Edison is supplying nonstandard service (265/460 volts) to Lipsett Steel Products, Inc., at a factory some five miles distant from petitioner's site, and refuses to supply it to petitioner. The commission however has determined that the conditions surrounding the two plants are different; that Lipsett is supplied with nonstandard service from the existing facilities in its location at no extra cost and without detriment to Edison's system or other customers. The commission has also determined that petitioner cannot be so serviced at no extra cost and without detriment to other customers of Edison. Petitioner has some motor machinery that will require 2,300 volts to operate, so that whether it receives standard service (120/208 volts), which Edison is prepared to furnish, or nonstandard service (265/460 volts), it will in any event have to install and utilize a transformer of its own in order to step up the current to the 2,300 volt level. However everyone concedes that it would be cheaper for the petitioner to install and operate this facility if it were given nonstandard service. This, of course, furnishes the motive for petitioner's demand.

In distinguishing between petitioner's situation and that of Lipsett the rationale of the commission's determination seems to be as follows. Lipsett is located in a heavily industrialized section in which a standard network system is installed and in operation; and since it is unnecessary to plan for an extension of this standard service it was equally economical to supply nonstandard service to Lipsett as it would have been to supply standard service. It was possible to supply nonstandard service there through the use of three 1,000 KVA transformers, whereas at petitioner's location where there are two factories, one across the street from the other, Edison would have to

install and operate four 1,000 KVA transformers, and also an auto-transformer to reduce the 460 volt service for use in one of the plants, if nonstandard service were furnished. Thus Edison would have to install and operate five transformers in connection with petitioner's plants if nonstandard service was given, whereas at Lipsett only three are required. The first alternative of course would result in increased cost to Edison and ultimately to other consumers. Edison's policy and practice is apparently to refuse, as exemplified by its tariff schedule, to make available special service facilities in the area where petitioner's plants are located unless this can be done at a cost not exceeding the comparable cost of providing standard service and without detriment to the development of its standard network distribution system. This policy and practice on the part of Edison has been approved in effect by the commission's determination, and apparently the commission, although it does not say so directly, has in effect decided that petitioner itself must meet the increased cost involved in the extension of a transformer to step up current for use in its buildings.

Obviously this is a field where the scanty knowledge of the court can hardly be set up against engineering judgment backed by a commission which has its own engineering experts, and it may be added that the record contains substantial evidence to sustain the determination of the commission. This is an area of regulatory power where the judgment of the commission must necessarily be conclusive unless it clearly appears to be arbitrary or capricious; otherwise the courts would be assuming regulatory powers which belong to the commission alone. On this record we cannot find that the determination of the commission was arbitrary or capricious, indeed it seems to us to have a perfectly rational basis to support it.

A matter of procedure has been called to our attention. The commission feels that this proceeding was erroneously referred to us in the first instance and we are of the opinion that the commission has correctly interpreted the procedure under article 78. Section 1296 of the Civil Practice Act (subds. 1–5a) provides that in an article 78 proceeding certain issues of law, such as whether an administrative body acted arbitrarily and capriciously or without any legal basis, are reviewable on the merits at Special Term. It is only where a hearing has been held and evidence taken pursuant to statutory direction that a transfer is to be made to the Appellate Division in the first instance to decide whether the determination to be reviewed is supported by substantial evidence (§ 1296, subds. 6, 7). As we view it hearings were not held in this matter pursuant to any

statutory direction, although in conformity with the rule of the commission (Rules of Pro. of Public Service Comm., rule III, subd. 2). There is no statutory direction in the Public Service Law, or elsewhere, directing a hearing upon the complaint of an individual consumer with regard to alleged tariff violations, including an issue of discrimination. That section of the Public Service Law cited by the Special Term (§ 66, subd. 5) requires a hearing only where there has first been a voluntary hearing on the part of the commission and the commission thereafter is of the opinion that the utility involved may be violating the law. That situation is not presented here. In this proceeding a hearing was held upon the request of the petitioner and was granted as a matter of discretion by the commission. The erroneous procedure adopted does not however constitute a reversible error because the statute requires us to dispose of the issues whether the transfer was proper initially or not.

The determination of the commission should be confirmed, with $50 costs and disbursements.

BERGAN, COON, HERLIHY and REYNOLDS, JJ., concur.

Determination of the commission confirmed, with $50 costs and disbursements.