In the Matter of 1133 AVENUE OF THE AMERICAS CORP. et al., Petitioners, v PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK et al., Respondents.

Third Department, July 6, 1978

**APPEARANCES OF COUNSEL**

*Surrey, Karasik, Morse & Seham (Martin C. Seham* of counsel), for petitioners.

*Peter H. Schiff (Janet Hand Deixler* of counsel), for Public Service Commission, respondent.

*Joy Tannian* and *Richard W. Babinecz (Bernard L. Sanoff* and *Kronish, Lieb, Shainswit, Weiner & Hellman* of counsel), for Consolidated Edison Company of New York, Inc., respondent.

### OPINION OF THE COURT

MAHONEY, P. J.

Petitioners, 1133 Avenue of the Americas Corp. and the Owners' Committee on Electric Rates, Inc., purchase electricity from the Consolidated Edison Company (Con Edison). On June 4, 1976 Con Edison commenced Public Service Commission case No. 27029 by filing new, increased electric rates with the respondent Public Service Commission (PSC). The PSC suspended implementation of the new rates and convened public hearings to determine the propriety of the proposed rates. The two petitioners herein were among 25 parties of record who appeared at the hearings. In this article 78 proceeding, petitioners seeks to vacate certain of the rates approved by the PSC on the ground that the PSC failed to give petitioners adequate notice of three meetings (occurring on Feb. 14, 15 and 24, 1977) during which issues of particular importance to petitioners were discussed and tentatively resolved. The respondents PSC and Con Edison contend that adequate notice was given and, in any event, if there were defects of notice they were cured by the PSC's treatment of petitioners' motion for rehearing.

■ In the absence of a specific statutory notice provision, the controlling standard is procedural due process. In the context of an administrative proceeding, a party (such as petitioners herein) whose property interests may be affected, is entitled to procedures "tailored, in light of the decision to be made, to 'the capacities and circumstances of those who are to be heard' [citation omitted], to insure that they are given a meaningful opportunity to present their case." *(Mathews v Eldridge,* 424 US 319, 348-349).

Prior to its application for higher rates made in June, 1976, Con Edison had sold two generating plants to the Power Authority of the State of New York (PASNY). Certain governmental customers within Con Edison's service area then began to purchase power from PASNY rather than Con Edison. In

order to reimburse Con Edison for the revenue lost as a result of the transfer of these customers to PASNY, the PSC approved a transfer adjustment surcharge to be paid by Con Edison's remaining customers on a per kilowatt hour basis. This method of levying the transfer adjustment was in force at the time case No. 27029 (the case under review herein) was commenced. In the course of case No. 27029 the PSC considered, *inter alia,* changes in the method of levying the transfer adjustment and also the amount which PASNY would pay Con Edison for the use of its delivery system (the so-called "PASNY Delivery Charges").

The petitioners, consisting mostly of owners of commercial buildings (which redistribute electricity to their tenants), had no interest in the "PASNY Delivery Charges" since they would directly affect only PASNY and Con Edison.[1] Petitioners were concerned, however, with the transfer adjustment, especially as to the method by which it would be billed to Con Edison's remaining customers. Apparently, petitioners consume a high proportion of their power needs during relatively short time periods (i.e., during business hours) and therefore wished to discourage a transfer adjustment charge based on "peak demand responsibility".[2] Petitioners advocated a continuation of the transfer adjustment surcharge, which was based on total energy consumed.

In its opinion and order in case No. 27029 (issued April 29, 1977), the PSC decided that the transfer adjustment would be billed on the basis of peak responsibility. This was clearly reasonable since the transfer adjustment is (as petitioners concede) a demand-related rather than an energy-related factor.[3] Insofar as our review of the merits of the rate determination, it need be no more than reasonable and free from errors of law *(Matter of Consolidated Edison Co. of N. Y. v New York State Public Serv. Comm.,* 53 AD2d 131). However, petitioners

---

1. The amount of the delivery charges would have an indirect effect on both PASNY's and Con Edison's customers, but the effect would be negligible.

2. To bill the transfer adjustment on the basis of "peak demand responsibility" means to set a customer's share of the adjustment in proportion to his responsibility for the peak load placed on the electric utility system rather than in proportion to the total amount of energy consumed by said customer.

3. Demand-related factors are those fixed costs which must be incurred to provide the generating and distribution capacity to meet peak demand. During periods of low demand, capital invested in these fixed costs is unproductive. Energy-related factors are those (such as fuel costs) which vary with the amount of energy consumed (e.g., the fewer kilowatt hours consumed, the less fuel consumed).

urge that there are alternatives to peak responsibility billing which the PSC might have adopted had petitioners been given adequate notice of the hearings on February 14, 15 and 24.

██ Assuming, *arguendo,* that the original notice (dated Jan. 26, 1977) of the meetings concerning the transfer adjustment did not constitute reasonable notice,[4] the material received by petitioners' counsel between the end of the February, 1977 hearings and the PSC's decision (issued April 29, 1977) gave petitioners clear notice that the question of how to bill the transfer adjustment was under consideration.

A written stipulation between certain parties (other than petitioners) was forwarded to petitioners' counsel on March 9. The first paragraph stated that the transfer adjustment "should be [made a part of] base rates on a peak responsibility basis". On March 14 Con Edison's brief (entitled "Con Edison's memorandum With Respect to Rolling the Transfer Adjustment Into Base Rates") and the PSC's staff brief on the subject of transfer adjustment billing were served on petitioners' counsel. Thus, petitioners received notice that the matter of primary concern to them was under active consideration by the PSC, and yet they took no action to present their case to the PSC until May 29, 1977, 30 days after the PSC had rendered its decision and more than two months after they received the unambiguous stipulation.

Even assuming there was a defect in notice to petitioners, they could not have been prejudiced thereby. Upon their motion for rehearing, they raised their objections to the peak responsibility method and, in its decision on the motion, the PSC expressly considered and rejected them.

The orders should be confirmed, and the petition dismissed, with one bill of costs against petitioners.

SWEENEY, KANE, STALEY, JR., and MIKOLL, JJ., concur.

---

4. The notice (dated Jan. 26, 1977) stated that hearings would be commenced on February 14 "to afford interested parties the opportunity to cross-examine witnesses who will offer testimony relating to the delivery charge by [Con Edison] for electric energy delivered by it to [PASNY] as it relates to the instant proceeding; which said testimony has heretofore been filed and served upon parties to this proceeding." Thus, no mention is made of the transfer adjustment. However, attached to the notice were eight pages of prefiled testimony which included an extensive discussion of the peak responsibility billing proposal for the transfer adjustment eventually adopted by the PSC. If petitioners' counsel had read through the testimony, he would have known what subjects were to be considered at the hearings. In light of our conclusions concerning subsequent notices to petitioners, it is not necessary to decide if the January 26, 1977 notice was reasonable notice.

Orders confirmed, and petition dismissed, with one bill of costs against petitioners.