138

In the Matter of EXECUTONE/MONROE COUNTY, INC., et al., Appellants, v PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK et al., Respondents.

Third Department, November 29, 1979

## APPEARANCES OF COUNSEL

*Keith J. Roland* for appellants.

*Peter H. Schiff* and *Janet Hand Deixler* for Public Service Commission, respondent.

*Nixon, Hargrave, Devans & Doyle (Frank H. Penske* and *Michael T. Tomaino* of counsel), for Rochester Telephone Corporation, respondent.

**OPINION OF THE COURT**

HERLIHY, J.

Rochester Telephone Corporation (Rochester) provides telephone service in the Rochester area and, pursuant to the traditions of such utilities, it had leased its equipment to its customers.

Recently, the New York Public Service Commission (commission) initiated a policy whereby telephone customers may elect to own their own equipment and interconnect it with the existing phone network (see, e.g., *Matter of Tele/Resources v Public Serv. Comm. of State of N. Y.,* 58 AD2d 406, 408, mot for lv to app den 43 NY2d 647). Such customers may purchase the equipment from any available source. Petitioners are firms who sell telephone equipment in the Rochester area.

Rochester requested permission to sell certain of its already-in-place equipment to the customers currently using it. Petitioners challenge the price at which the commission has allowed it to be sold. The price of the equipment is to be negotiated with each customer based upon the marginal opportunity costs, but in no event is it to fall below the net book value of the equipment.

The petitioners are competitors of Rochester. They claim the tariff will allow predatory prices and drive them out of business. Rochester contends that this rate is the only way it can recoup the costs of installing the equipment and prevent its monopoly customers from having to subsidize the loss that Rochester would otherwise incur as a result of the termination of so many telephone rentals. The commission authorized the rate, and Special Term upheld the commission.

The commission, on its own initiative, commenced Case No. 26894* on September 9, 1975 and, as a part of that case, it ordered, on February 11, 1977, all New York telephone companies to show cause why a program providing for the interconnection of consumer owned equipment with the existing telephone network should not be implemented. On May 24, 1977, Rochester voluntarily filed the tariff at issue herein (1) allowing customer interconnect without use of a network protective device and (2) permitting its subscribers to purchase certain of its already-in-place telephone equipment for future intercon-

---

* "Proceeding on Motion of the Commission as to the Extension of Liberalized Methods of Interconnection of Customer-Owned Equipment to the Statewide Telecommunications Network".

nect use. It is the proposal to sell the equipment at no set price, but not less than "net book value", which is under attack.

Notice of Rochester's proposed tariff was not given directly to the parties in Case No. 26894, but it was duly published in a local newspaper, in the *State Bulletin,* and in the commission's *Weekly Bulletin* of May 31, 1977. However, on June 10, 1977, an interested party in Case No. 26894, North American Telephone Association (NATA), filed objections, alleging that it had not been given prior notice that the case would include Rochester's May 24, 1977 tariff. Also, NATA registered substantive objections to Rochester's tariff and urged the commission to defer decision pending further consideration. All of the petitioners are members of NATA.

On June 14, 1977 the staff issued a report to the commission wherein it fully analyzed the tariff of Rochester and recommended that it be approved subject to comments. On June 16, 1977, the staff issued a report to the commission wherein it considered and rejected the NATA objections to the Rochester tariff and again recommended that such tariff "be permitted to become effective on June 24, 1977."

On June 21, 1977, the commission determined not to delay the implementation of the tariff and ruled that if no further comments were received before June 28, 1977 the tariff would become effective upon the order of any one commissioner. Such an order was issued on June 28, 1977, and it spelled out the particular procedure the commission expected Rochester to follow in pricing its terminal equipment, i.e., marginal opportunity cost. On July 1, 1977, the petitioners sought a stay and reconsideration of the July 1 order; however, the full commission, on July 6, 1977, issued an order ratifying the July 1 order and on August 3, 1977 the commission denied the petition.

■ This proceeding was commenced on November 7, 1977 and Special Term (MINER, J.) dismissed the petition upon its merits. A review of the petitioners' arguments reveal that although they did allege in their petition that there was an issue of substantial evidence to support the commission's allowance of the tariff, the issues are solely ones of law, and in its brief it is recited that "the issues to be decided are legal alone". Accordingly, Special Term did not err in proceeding to consider the merits of the petition (cf. CPLR 7804, subd [g]).

The petitioners present their contentions upon this appeal

in the form of an argument which generally raises the issues that procedurally the order should be annulled for a failure to comply with the hearing and notice requirements of the Public Service Law, the State Administrative Procedure Act, the constitutional requirements of due process, and/or that the tariff is discriminatory in violation of Federal and State antitrust policies, or otherwise unlawful.

As to procedure, the commission contends that the sale of equipment pursuant to the tariff is a transfer of a part of the "works or system" which only required the written consent of the commission pursuant to section 99 of the Public Service Law and not a hearing. Petitioners contend that such a transfer of equipment is not the type of transfer contemplated by section 99. At the outset, it should be noted that at best a hearing is discretionary and not mandatory in regard to this particular tariff (Public Service Law, § 92, subd 2; see *Matter of United States Tube & Foundry Co. v Feinberg*, 7 AD2d 591, 596). Upon this record, it is apparent that Rochester submitted evidence to the commission and that the staff made lengthy studies which were reported to the commission and, accordingly, there was no abuse of discretion by the commission in not holding a hearing *(Matter of Air Call N. Y. Corp. v Public Serv. Comm.*, 62 AD2d 1127, mot for lv to app den 45 NY2d 710).

The petitioners do not point to any particular due process failure other than an alleged lack of notice. However, the record unequivocally establishes that the petitioners had adequate notice both by the regular publication of the tariff and by the procedure adopted herein. As the petitioners pointed out in their July 1, 1977 application for a stay and reconsideration, NATA did file comments on June 10, 1977 that "specifically addressed the sale of in-place and new terminal equipment". The commission fully reviewed these comments and all of petitioners' allegations in its decision of August 3, 1977 and, accordingly, the petitioners have been afforded adequate opportunity to make their objections known. The petitioners are not prejudiced by the procedures used herein and the respondents have in fact complied with all notice requirements *(Matter of 1133 Ave. of Amers. Corp. v Public Serv. Comm. of State of N. Y.*, 62 AD2d 787). The petitioners have not established any defect in procedure which would warrant an interference with the determination of the commission.

■ As to the contention that the tariff is unlawful, the record discloses that the commission gave due consideration in its determination to the possibilities of anticompetitive and antitrust situations implicit in the sale of in-place equipment to customers. The policy adopted by the Public Service Commission is a new departure and presently there is no decisional authority for its action.

The staff in its report of June 14, 1977 noted the problems of possibly anticompetitive and/or antitrust pricing, and the record indicates that the commission has attempted to fashion its orders so as to minimize the possibility of anticompetitive prices *(Matter of Tele/Resources v Public Serv. Comm. of State of N. Y.,* 58 AD2d 406, 411, *supra).* Furthermore, the rates are not subject to being discriminatory simply because prices may vary from customer to customer since the commission has relied upon the approved method of determining a marginal opportunity cost (see *Matter of New York State Council of Retail Merchants v Public Serv. Comm. of State of N. Y.,* 45 NY2d 661) as a guide in reaching a negotiable price. The formula is specific enough to meet the requirements of section 91 of the Public Service Law as to reasonable and nondiscriminatory charges, and the commission notes in its decision of August 3, 1977 "we have the power to institute a penalty action against the company for disobeying this order if, at any time, we are shown evidence that it is engaging in predatory pricing". (See, also, *Matter of Tele/Resources v Public Serv. Comm. of State of N. Y., supra,* p 411.)

As to the question of whether or not the rates do in fact include overhead or fully allocated costs as well as the net book value of equipment, the record herein is sufficient to give a rational basis for concluding that as to used equipment already in place, the utility and its ratepayers are subject to substantial losses if sales are not authorized which might result in minimizing such loss. As indicated hereinabove, the commission has satisfied its duties by considering the potential anticompetitiveness consequence of the rates *(Matter of Tele/ Resources v Public Serv. Comm. of State of N. Y., supra).*

The judgment should be affirmed, with costs.

SWEENEY, J. P., KANE, STALEY, JR., and MIKOLL, JJ., concur.

Judgment affirmed, with costs.