In the Matter of KAREN S. BURSTEIN, as Executive Director of the New York State Consumer Protection Board, et al., Petitioners, v PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK et al., Respondents. — Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Albany County) to review a determination of the Public Service Commission which found that construction of the nuclear power plant Nine Mile Point No. 2 was reasonable and adopted an incentive rate of return on a capital expenditure of $4.6 billion for the construction of that plant. Nine Mile Point Unit No. 2 (NMP-2) is a 1,085 megawatt nuclear plant under construction near Oswego, New York, by Niagara Mohawk Power

Corporation, New York State Electric and Gas Corporation, Rochester Gas and Electric Corporation, Long Island Lighting Company, and Central Hudson Gas and Electric Company, designated in the proceeding under review as "cotenants". Under construction since 1971, the project experienced numerous delays, accompanied by rapidly escalating costs caused, in part, by the need for additional seismic studies and the regulatory uncertainties following the Three Mile Island nuclear accident in Pennsylvania. Consequently, in December of 1979, the cotenants slowed construction to evaluate the future of the project. Troubled by the course of events, the Public Service Commission (commission), in July of 1980, engaged the services of Theodore Barry & Associates (TB & A) to conduct an independent, objective assessment of the reasonableness of the cost of the project, the scheduled estimate for its completion and the management steps taken to control construction costs. Their report, issued in July, 1981, concluded that a commercial operation date of 1987 was most likely, rather than 1986, as estimated by the cotenants, and that the final costs would significantly exceed the estimated $3.7 billion. In addition, the report found the single most important factor in controlling cost was controlling the construction schedule and that if the plant was built, it should be constructed as expeditiously as possible. After studying the economic and financial consequences of alternative generating plans, the commission staff also submitted a report in which it recommended that construction of NMP-2 be completed. Recognizing the impact of the project upon both the utilities and the consumer, the commission, on September 2, 1981, established a proceeding in the public interest for public review of the recommendations contained in the TB & A and staff reports. The hearings proceeded expeditiously, as directed by the commission. In addition, several weeks subsequent to completion of the hearings, the commission requested further public comment upon a proposed incentive rate of return plan for a 20% incentive or penalty to be applied to changes in revenue requirements occasioned by any cost overrun or underrun from the target completion cost of $4.6 billion for NMP-2. The amount for each cotenant was to be determined in future rate proceedings at the time rates were set that included NMP-2 expenditures. Petitioner Karen S. Burstein, as Executive Director of the New York State Consumer Protection Board (CPB), as well as many others, participated in these hearings and commented on the incentive rate of return plan, producing a record containing 4,250 pages and 105 exhibits which was certified without recommendation directly to the commission for its determination. On April 16, 1982, the commission issued its opinion and order No. 82-7, concluding that construction of NMP-2 should proceed and also adopting the incentive rate of return plan to be applied to NMP-2 completion costs. Following denial by the commission of an application for reconsideration, this transferred CPLR article 78 proceeding, seeking annulment of order No. 82-7 and a halt to the construction of NMP-2, was commenced. At the outset, there is presented the threshold question of whether the instant matter was properly transferred to this court for review. Resolution of that issue requires an examination of the applicable provisions of the Public Service Law to determine whether the determination before us was made after a hearing which was conducted "pursuant to direction by law" (CPLR 7803, subd 4). We note that the commission, in its decision, stated that the purpose of the entire proceeding was to permit public review of the findings and reports of TB & A and staff which were before the commission and in effect, to publicly ventilate information obtained as a result of their thorough investigation. As such, the hearings were not mandated by any provision of the Public Service Law, were discretionary in nature, and a hearing was not required (*Matter of United States Tube & Foundry Co. v Feinberg,* 7 AD2d 591; see, also, *Matter of Save the Pine*

*Bush v Planning Bd.,* 83 AD2d 741). Nor do we view the adoption of the incentive rate of return policy in the order of the commission as a basis for concluding that the inquiry conducted converted the proceeding into an inquiry involving the establishment of utility rates, thus requiring a hearing under the provisions of subdivision 12 of section 66 of the Public Service Law. To be sure, such a hearing is, inexorably, down the road, but present determinations of future policy which may affect rates are not within the contemplation of the statute requiring a hearing upon the establishment of any special new rate or charge. Accordingly, determination of the proceeding by Special Term would have been proper. However, once the matter is before us, we may determine all issues (*Matter of 125 Bar Corp. v State Liq. Auth.,* 24 NY2d 174, 180; Siegel, NY Prac, § 568, p 797). It is our conclusion that this record fails to demonstrate any unreasonable or unlawful actions by the commission. Its determination was not arbitrary or capricious and certainly not an abuse of discretion. Moreover if we were to reach the question of substantial evidence, we would be compelled to observe that the extensive and impressive independent expert testimony, based upon the most sophisticated modern approach to complicated projections of future economic activity, clearly supports the determination of the commission. The highly technical and detailed findings contained in its 64-page opinion are supported by substantial evidence (*Matter of Simpson v Wolansky,* 38 NY2d 391, 396; *Matter of Consumer Protection Bd. v Public Serv. Comm.,* 78 AD2d 65, 69, mot for lv to app den 53 NY2d 607). We have considered petitioners' remaining arguments and find them to be without merit. Consequently, the determination should be confirmed. Having reached this conclusion, we find it unnecessary to address respondents' additional argument for dismissal of the proceeding. Determination confirmed, and petition dismissed, without costs. Mahoney, P. J., Kane, Main, Casey and Levine, JJ., concur.