■ In the Matter of COMMUNITY MATERNITY SERVICE et al., Respondents, v PAUL L. GIOIA et al., Constituting the Public Service Commission of the State of New York, et al., Appellants.—Weiss, J. Appeal from a judgment of the Supreme

Court (McDermott, J.), entered March 11, 1988 in Albany County, which granted petitioners' application, in a proceeding pursuant to CPLR article 78, to annul a determination of the Public Service Commission denying petitioners a formal evidentiary hearing on a complaint against respondent New York Telephone Company.

This appeal calls into question the continued validity of termination charges by respondent New York Telephone Company (hereinafter NYT) for two-tier terminal equipment services following the divestiture of AT & T. Pursuant to the usual terms for two-tier service, a methodology this court has previously approved (see, Matter of Tele/Resources v Public Serv. Commn., 58 AD2d 406, lv denied 43 NY2d 647), the customer pays an "A" rate pertaining to capital costs and a "B" rate covering ongoing charges. The "A" rate is a fixed amount payable monthly for a specific term. Cancellation of two-tier service prior to expiration of the term results in a "termination" charge measured by the balance of "A" payments due, less the salvage value, if any, of the equipment. The two-tier service effectively presents a tradeoff, for while it differs from the basic month-to-month telephone service arrangement that can be terminated at any time, it accords the customer a significant price discount.

Pursuant to the AT & T divestiture decree (see, United States v American Tel. & Tel. Co., 552 F Supp 131, affd sub nom. Maryland v United States, 460 US 1001), all apparatus utilized to provide the two-tier service was transferred to AT & T Information Systems (hereinafter ATTIS), an AT & T subsidiary, effective January 1, 1984. Ownership of the inside wiring, however, remained with NYT (see, United States v Western Elec. Co., 569 F Supp 1057, 1129). In November 1983, the Public Service Commission (hereinafter PSC) approved the revision of NYT's two-tier service tariff in order to separate or "unbundle" the apparatus rates from the wire rates. The net postdivestiture effect is that NYT's termination charges pertain only to the value of the inside wiring "A" rates. The unbundling did not otherwise alter the termination charge or otherwise increase the customer's costs.

During 1984, NYT attempted to impose termination charges against petitioners Community Maternity Service, Paul Ross, M.D., P. C., and Fiume Jet Spray, Inc., customers who discontinued the two-tier service early and arranged for similar services from one of NYT's competitors. These petitioners, together with various private vendors of telephone terminal equipment systems, complained to the PSC that the termina-

tion charges were illegal due to the intervening divestiture of AT & T. Essentially, petitioners maintained that the apparatus transfer to ATTIS precluded NYT from enforcing the termination provision of their service agreements under the revised tariff. Ultimately, the PSC denied petitioners' request for a formal hearing, finding, on the basis of a staff analysis, that the two-tier agreements remained enforceable. Petitioners then commenced this CPLR article 78 proceeding on February 27, 1986, seeking to annul the PSC's denial of a formal hearing. Supreme Court granted the petition and directed the PSC to conduct a plenary hearing. Respondents have appealed.

We reverse. Initially, we find petitioners' challenge to the PSC's November 1983 determination approving the unbundling of the two-tier rates barred by the governing four-month Statute of Limitations (see, CPLR 217; *Matter of National Fuel Gas Distrib. Corp. v Public Serv. Commn.*, 90 AD2d 605, 606). The record indicates that petitioners first complained to the PSC in June 1984 and did not commence the instant proceeding until February 1986. While Supreme Court found that petitioners were not clearly notified of the change, NYT's proposed tariff revision was duly published in the State Register on August 3, 1983. This notice specifically detailed the systems affected and did not implement a rate increase. In our view, the notice adequately apprised petitioners and others similarly situated of the unbundling (see, *New York Tel. Co. v State of New York, Div. of State Police*, 85 AD2d 803, 804, *affd* 58 NY2d 658). Thus, petitioners are precluded from challenging the November 1983 tariff revision which became final and binding upon approval.

We further find the PSC's approval of NYT's wire termination charges entirely rational. This is not an instance, as Supreme Court found, of a unilateral breach of contract by NYT. The provision of two-tier services is not a pure matter of contract but incorporates NYT's filed tariff provisions governing the relationship. As such, the PSC is statutorily authorized to adjust the rates, provided the costs remain just and reasonable (see, Public Service Law § 91 [1]; § 97 [1]; *New York Tel. Co. v State of New York, Div. of State Police, supra*). More importantly, the unbundling of the rates did not fundamentally impair the nature of the NYT-customer relationship. As indicated, the customer did not incur any additional charges and NYT did not generate more revenue. For all practical purposes, two-tier services remain the same following the AT & T divestiture, with the exception that ATTIS now supplies

the apparatus. This variation does not vitiate petitioners' obligations under the two-tier agreements. Nor has the methodology for computing the wire termination charge been altered. The customer's liabilities are premised on the "A" rates already accepted upon signing the two-tier agreement, and not on NYT's operating costs. The only difference is that the termination charge is applied only to the unbundled "A" rate, i.e., for the inside wire. Moreover, the PSC could rationally conclude that a credit was not warranted for the remaining wire.

In the final analysis, the PSC's unbundling of the rates was an appropriate response to the AT & T divestiture and provided the mechanism to continue the two-tier service agreements. The PSC's further approval of the wire termination charge does not controvert petitioners' "contractual" interests and constitutes a rational determination. Finally, given the nature of the issues presented, the PSC properly resolved this dispute on the basis of an internal review, without requiring a formal hearing (see, Public Service Law § 96 [3]; *Matter of Kessel v Public Serv. Commn.*, 136 AD2d 86, 97, *lv denied* 72 NY2d 805; *Matter of Executone/Monroe County v Public Serv. Commn.*, 71 AD2d 138, 142).

Judgment reversed, on the law, without costs, determination confirmed and petition dismissed. Mahoney, P. J., Weiss, Mercure and Harvey, JJ., concur; Levine, J., not taking part.