In the Matter of the NEW YORK CITY HOUSING AUTHORITY et al., Petitioners, v. PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK et al., Respondents.

Third Department, June 7, 1965.

*Leo A. Larkin, Corporation Counsel (Francis I. Howley* and *Samuel Mandell* of counsel), for City of New York, petitioner.

*Hays, Sklar & Herzberg (Ben Herzberg* and *Frederick F. Greenman, Jr.,* of counsel), for New York City Housing Authority, petitioner.

*Charles Poletti* and *Martin C. Seham* for 100 Park Avenue, Inc., and others, petitioners.

*Kent H. Brown, George H. Kenny, Martin L. Barr* and *Joseph J. Doran* for Public Service Commission, respondent.

*Whitman, Ransom & Coulson* (*Patrick H. Sullivan, Colley Williams* and *Bernard L. Sanoff* of counsel), for Consolidated Edison Company of New York, Inc., respondent.

HERLIHY, J. The process of rate-making is a legislative function, not a judicial one, and in this instance the Public Service Commission is acting under authority delegated by the Legislature (*Matter of Public Serv. Comm. v. Norton,* 304 N. Y. 522, 530). The methods, therefore, employed by the Public Service Commission in its legislative function of rate-making are not to be tested by the usual administrative procedural rules (*Matter of Rockland Light & Power Co. v. Maltbie,* 241 App. Div. 122, 124). As we stated rather recently in *Matter of City of New York v. Public Serv. Comm.* (17 A D 2d 581, 584, mot. for lv. to app. den. 13 N Y 2d 594): " We look then to see, not whether the commission has made a determination wholly free from error in the process, or quite in accord with a judicial view of how the procedure before the commission should be managed in detail, but to the ' total effect ' of the rate order in relation to what is just and reasonable (*Power Comm. v. Hope Gas Co.,* 320 U. S. 591, 602).''

With these established ground rules in mind, we look to the issues raised on this appeal.

The New York City Housing Authority contends that the commission improperly denied its request for an ordinary subpœna and a subpœna *duces tecum* directed to a New York City bank and intended primarily to show that a substantial account was maintained in the banking institution to compensate it for handling the " debit and credit items " or, in other words, to maintain an account sufficient in amount to compensate the bank for the expenses of handling the account and thus avoid incurring bank service charges. The commission, in denying the requests for these subpœnas, gave as the bases therefor the reasonable and substantial reasons that an investigation into the banking procedures of First National City Bank would take up too much time, and that the required bank balance included in the rate base was the same as had been permitted in the previous Consolidated Edison rate hearings of 1959. In view of the fact that Consolidated Edison's business had expanded since 1959 and consequently at the time of this case required a larger volume of transactions to be handled by the bank, the amount included in the rate base as a bank balance is *a fortiori* reasonable. It appears also that at most the amount involved would

be 3 or 4% on some part of 16 million dollars, which amount could not affect the ultimate rate increase to the extent that this court could say that the refusal to issue a subpœna was prejudicial and an improvident exercise of discretion.

The City of New York likewise made several applications for subpœnas, all of which were refused by the commission for the following reasons: (1) the extremely broad, sweeping nature of the city's application, (2) granting the application would unduly delay the proceedings, (3) the books of Consolidated Edison are kept in strict accordance with the "Uniform System of Accounts for Electric Corporations" prescribed by the commission, (4) the commission has members of its staff permanently stationed in the offices of Consolidated Edison to continuously examine its books, (5) Consolidated Edison, pursuant to the requirements of section 114 of the Public Service Law, maintains continuous property records which show immediately the original cost of such property and depreciation reserves, and (6) such practices are followed for the express purpose of enabling the commission to discharge its function of regulation of the utilities.

The issuance of subpœnas in rate proceedings is not in accordance with the CPLR but governed by section 19 of the Public Service Law. Nevertheless, any reasonable request for a subpœna should be honored. However, in the present controversy, particularly as to the applications of the City of New York, the commission has set forth valid reasons for its refusal and further advised the city that its staff had carefully scrutinized the exhibits that were in evidence. The reasonableness of the end result only, namely, the rate fixed by the commission, is the only question open for review, not the procedural correctness of the commission's method or other incidental questions. We cannot find on this record that the refusal to grant the application of the Housing Authority or the city for subpœnas was arbitrary.

The New York City Housing Authority further contends that it was error to include in the rate base for plant in operation approximately 107 million dollars for the Transit Authority plants which were purchased by the company from the City of New York in 1959. It argues that Consolidated Edison failed to meet its statutory burden of proof in regard to the original cost of these plants inasmuch as a substantial part of the amount set forth was not for the intrinsic value of the plants but to eliminate competition in the utility field by the city. Its contention is based almost entirely upon a statement made by the chairman of the Consolidated Edison board at a stockholders' meeting, as follows: "I don't know about an income point of

view, but it is important to the company to eliminate the City of New York from competition in the power field ''.

It should be noted that the statement does not say that the price paid by Consolidated Edison was more than the '' intrinsic '' value or physical value of the plants. The record shows that the original cost of such plants was 136 odd million dollars for which Consolidated Edison paid 112 odd million dollars and that as of June 30, 1963 the amount had been adjusted by Consolidated Edison to approximately 107 million dollars and which accounting procedure — original cost less depreciation — had been independently investigated by the commission, as shown in the record. This procedure for establishing value is in the traditional standard and it appears in itself to support the reasonableness of the purchase price (see *Spring Brook Water Co.* v. *Village of Hudson Falls,* 269 App. Div. 515).

In our opinion, even if we overlook the assumption that the utility company's investment is assumed to be made in the exercise of reasonable managerial judgment (*Southwestern Tel. Co.* v. *Public Serv. Comm.,* 262 U. S. 276, 289) the commission had enough independent evidence before it to make a reasonable judgment.

The Housing Authority argues here that Consolidated Edison has not maintained its burden of proof on certain items included in the rate base. The statutory burden of proof (Public Service Law, § 66, subd. 12) refers not to each individual item of the company's evidence but to the over-all duty of the company to '' show that the change or proposed change * * * is just and reasonable ''.

The petitioners' additional contentions do not require review by this court. The detailed comprehensive opinion of Commissioner Mylott sufficiently answers these issues.

In *Matter of City of New York* v. *Public Serv. Comm.* (17 A D 2d 581, *supra*), we affirmed a finding of '' a fair rate of return of between 6.2 and 6.3% '' as reasonably supported by that record, and we find nothing in the present record to alter our opinion as to this percentage.

The determination should be confirmed.

GIBSON, P. J., REYNOLDS, TAYLOR and HAMM, JJ., concur.

Determination confirmed, with one bill of costs to respondents filing briefs.