In the Matter of CONSUMER PROTECTION BOARD OF THE STATE OF NEW YORK, Petitioner, v PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK et al., Respondents.

Third Department, December 8, 1983

APPEARANCES OF COUNSEL

*Kathy A. Bennett* (*Jonathan Rogoff* of counsel), for petitioner.

*David E. Blabey* (*Timothy P. Sheehan* of counsel), for Public Service Commission, respondent.

*Nixon, Hargrave, Devans & Doyle* (*John J. Diehl* and *Ernest J. Ierardi* of counsel), for Rochester Gas and Electric Corporation, respondent.

*Maher & Babinecz, P. C.* (*Gerard A. Maher* and *Andrew Gansburg* of counsel), and *Gould & Wilkie* (*Davison W. Grant* of counsel), for Orange and Rockland Utilities, Inc., and another, respondents.

OPINION OF THE COURT

MAHONEY, P. J.

In August of 1973, respondent Rochester Gas & Electric Corporation (hereinafter Rochester) applied to the State Board on Electric Generation Siting and the Environment (hereinafter siting board) for certification of a proposed plan for the construction of two fossil fuel power plants to be located in the Town of Sterling, Cayuga County. Subsequently, Rochester began considering plans to construct a nuclear power plant near the Sterling site. In March of 1975, the siting board suspended further proceedings, noting that various contingencies, including delay in completing the proposed nuclear plant, could revive the need for the two fossil fuel plants. Extensions of the suspension were obtained until February of 1980 when the siting board dismissed the application.

In the spring of 1974, respondents Orange and Rockland Utilities, Inc. (hereinafter Orange & Rockland), and Central Hudson Gas and Electric Corporation (hereinafter Central Hudson) agreed to participate with Rochester in the construction and financing of the nuclear project.[1] The

---

1. Niagara Mohawk Power Corporation eventually joined the project, but this proceeding has been discontinued as to that utility.

utilities then sought certification of the nuclear plant project from the siting board. Conditional certification was eventually granted in January of 1978 but, due to a decline in the utilities' need for additional generating capacity, the siting board suspended the certificate and ultimately vacated the certificate in February of 1980.

As part of the agreement to become participants in the nuclear plant project, Orange & Rockland and Central Hudson agreed to share two thirds of Rochester's expenditures for planning for the fossil fuel plant project. This agreement was based on the decision to offer such project as a statutorily required alternative to the nuclear plant project (see Public Service Law, § 142, subd 1). The remaining one third of Rochester's expenditures (approximately $4.5 million) were not shared because they exceeded the amount necessary to offer the fossil fuel plant project as an alternative to the nuclear plant project. The utilities also agreed not to share some $127,000 and $2 million expended by Central Hudson and Orange & Rockland, respectively, for planning and investigation related to possible generating sites. These amounts, collectively referred to as unshared costs, are the subject of this proceeding.[2]

After the proceedings before the siting board for certification of the fossil fuel and nuclear plant projects were terminated in February of 1980, the utilities itemized the amounts spent in connection with the planning for the nuclear project and the alternatives and petitioned the Public Service Commission (hereinafter PSC) for a determination that such expenditures were prudently incurred and were thus recoverable in rates charged to their customers. During proceedings before the PSC, petitioner Consumer Protection Board took the position that the unshared costs could not be recovered along with the planning costs associated with the nuclear plant project, but should have been written off when the projects for which they were incurred were abandoned. The PSC ultimately determined that the unshared costs were prudently incurred and were recoverable. Petitioner commenced the

---

**2.** Also included, as attached to the unshared costs, is an allowance for funds used during construction (hereinafter AFUDC) which represents interest paid on moneys borrowed to finance construction.

instant CPLR article 78 proceeding challenging the PSC's determination and such proceeding has been transferred to this court for determination.

A decision of the PSC will not be set aside unless it is found that the decision is unsupported by substantial evidence or is arbitrary, capricious or an abuse of discretion (*Matter of Lefkowitz v Public Serv. Comm.*, 50 AD2d 338, 340, affd 40 NY2d 1047). Moreover, where, as here, a highly technical matter is involved which is within the particular expertise of the PSC, due deference will be accorded its interpretation (*Matter of Consumer Protection Bd. v Public Serv. Comm.*, 78 AD2d 65, 69, mot for lv to app den 53 NY2d 607).

Initially, petitioner does not take issue with the PSC's conclusion that the unshared costs were prudently incurred. Petitioner argues that the unshared costs represent expenditures for proposed projects which were not beneficially related to the nuclear plant project as alternatives to that project. Petitioner also argues that these projects were abandoned when the utilities chose to pursue the nuclear plant project. Thus, petitioner contends that the unshared costs should have been written off when the projects for which they were incurred were abandoned and cannot be recovered from ratepayers along with the planning costs associated with the nuclear plant project.

Dealing first with Rochester's unshared costs, that utility argues that petitioner is collaterally estopped from attacking the PSC's treatment of such costs. In a prior case dealing with Rochester's electric rates, the PSC was faced with the issue of whether Rochester should be allowed to accumulate AFUDC[3] on its unshared costs. If the fossil fuel plant project was found to have been abandoned, continued accumulation of AFUDC would have been impermissible. In opinion No. 79-12, issued April 23, 1979, the PSC ruled that Rochester would be allowed to continue to accumulate AFUDC on its unshared costs. Petitioner appeared before the PSC in that case but did not raise the point that the fossil fuel plant project was abandoned. Rochester argues that implicit in the conclusion in opinion No. 79-12 is a finding that the fossil fuel plant project was not aban-

---

3. See n 2 (*supra*).

doned. Since petitioner did not challenge such finding at that time, Rochester contends that it is collaterally estopped from raising this argument now.

■ While the doctrine of collateral estoppel has been held to apply to administrative agency determinations, it is only applicable where the agency is acting in a judicial or quasi-judicial capacity (see *Bernstein v Birch Wathen School,* 71 AD2d 129, 132, affd 51 NY2d 932). The process of rate-making has been held to be a legislative, rather than judicial, activity (*Matter of New York Tel. Co. v Public Serv. Comm.,* 64 AD2d 232, 238, mot for lv to app den 46 NY2d 710; *Matter of New York City Housing Auth. v Public Serv. Comm.,* 23 AD2d 277, 278, mod 17 NY2d 246). Rochester argues that, in the instant case, the PSC was not setting rates but was making a legal determination based upon a set of facts. However, even if Rochester is correct, there is no question that in opinion No. 79-12 the PSC was doing nothing but setting Rochester's electric rates. Thus, that decision cannot be afforded collateral estoppel effect.

■ Turning to the merits of the treatment of Rochester's unshared costs, the PSC did not rule that they were recoverable because they were related to the nuclear plant project. Rather, the PSC held that they were recoverable because the fossil fuel plant project was not abandoned until 1980 when, after a number of extensions, the application for certification was dismissed by the siting board. Petitioner contends that, regardless of the fact that such application was not dismissed until 1980, the fossil fuel plant project was abandoned for all practical purposes in 1977. In support of this contention, petitioner points to the fact that Rochester claimed an abandonment loss for the fossil fuel plant project on its 1977 Federal income tax return. We reject this argument since it presupposes that the phrase "closed and completed transaction" for Federal income tax purposes is identical to the term "abandoned" for purposes of the accounting methods mandated by the PSC (cf. *Old Colony R. R. Co. v Commissioner of Internal Revenue,* 284 US 552, 562). It may well be that for tax purposes the expenditures on the fossil fuel plant project were closed and completed when Rochester decided to pursue the nuclear plant project. It does not necessarily

follow that the fossil fuel plant project was abandoned at that time since it was being kept open as the statutorily required alternative. In our view, the record evidence clearly supports the PSC's conclusion that Rochester's unshared costs are recoverable.

Resolution of petitioner's challenge to the recoverability of the unshared costs of Central Hudson and Orange & Rockland is a more difficult matter. These costs involved preliminary investigations into possible generating sites. Investigation into these sites was unquestionably terminated in 1974 when Central Hudson and Orange & Rockland agreed to participate in the nuclear plant project. Moreover, these possible sites were not offered to the siting board as alternatives to the nuclear plant project. Thus, petitioner urges that these projects were abandoned in 1974 and, since they were not related to the nuclear plant project, they cannot be recovered along with the other costs of that project. At first glance, this position appears to have merit. However, the PSC concluded that, despite the fact that the sites on which the unshared costs of Central Hudson and Orange & Rockland were expended were not formally offered to the siting board as alternatives to the nuclear plant project, the costs were not abandoned and of no future benefit since record evidence established that the investigations formed the basis for the participation of the utilities in the nuclear plant project. The evidence also indicates that the sites remained as the next best alternatives to the nuclear plant project. Had the certificate for the nuclear plant project been vacated in February of 1980 for a reason other than decreased need for generating capacity, the utilities could have resumed consideration of these sites. Thus, it cannot be said that the expenditures for preliminary investigations were abandoned in 1974 and were of no future benefit after that time.

The PSC also found that the accounting treatment of the unshared costs by Orange & Rockland and Central Hudson was based upon a reasonable interpretation of Technical Release No. 6, a publication put out by the PSC's Office of Accounting and Finance. Technical Release No. 6 deals with the accounting treatment of expenditures made in contemplation of construction of a power plant where alter-

nate sites are explored. The release suggests that such expenditures are properly chargeable as expenses incurred in the construction of the plant chosen. Petitioner argues that this release applies only to funds expended on sites which are eventually offered as alternate sites. The utilities' interpretation of the release was that any costs incurred for studies of sites that are beneficial to the certification process, even though they do not become the fully studied alternatives in the certification proceeding, are chargeable to the costs of the plant eventually constructed. The PSC admitted that either interpretation was reasonable based upon the language of the release. Since the utilities relied on the release and since their interpretation thereof was not unreasonable, the PSC held the unshared costs to be recoverable. The PSC was acting within its area of particular expertise and was interpreting one of its own publications. That being the case, we cannot say that the PSC erred in concluding that the utilities' interpretation of Technical Release No. 6 was reasonable.

In conclusion, we hold that the determination of the PSC that the three utilities' unshared costs, along with accumulated AFUDC, were recoverable is supported by substantial evidence in the record and is neither arbitrary nor capricious.

The determination should be confirmed, and the petition dismissed, without costs.

MAIN, CASEY, MIKOLL and YESAWICH, JR., JJ., concur.

Determination confirmed, and petition dismissed, without costs.