In the Matter of OWNERS COMMITTEE ON ELECTRIC RATES, INC.,
Respondent, v PUBLIC SERVICE COMMISSION OF THE STATE
OF NEW YORK, Appellant.

Third Department, September 14, 1989

**APPEARANCES OF COUNSEL**

*William J. Cowan (Lawrence G. Malone* and *Jonathan D. Feinberg* of counsel), for appellant.

*Seham Klein & Zelman (Joel R. Dichter, Martin C. Seham* and *Karen M. Dowd* of counsel), for respondent.

**OPINION OF THE COURT**

HARVEY, J.

In March 1985, respondent commenced an investigation to determine the best means by which savings from the purchase of low-cost Canadian hydroelectric energy by the New York Power Authority would be allocated among the customers of the seven-member investor utilities of the New York Power

Pool which purchase such energy from the New York Power Authority. Integral to this determination was whether the utilities should allocate the cost savings equally on a per consumer basis or to allocate savings proportionately on a per kilowatt-hour of consumption basis. Following conferences and the submission of comments by interested parties, a recommended decision of an Administrative Law Judge was issued in March 1986 advocating adoption of the per kilowatt-hour formula. However, in an opinion and order issued on June 16, 1986, respondent ultimately adopted the per consumer formula.

A copy of the determination was mailed to all interested parties on that date including petitioner, a nonprofit membership corporation which advocated the use of the per kilowatt-hour formula.[1] Petitioner received a copy of the determination on June 19, 1986.[2] Thereafter, petitioner commenced this CPLR article 78 proceeding challenging respondent's determination as being arbitrary and capricious and contrary to Public Service Law § 65. Personal service was effected October 20, 1986.[3] Respondent then sought dismissal of the proceeding on the ground that it was not commenced within the four-month Statute of Limitations imposed by CPLR 217. Supreme Court denied this motion. Subsequently, respondent sought leave to appeal and petitioner cross-moved for an order staying enforcement of respondent's order. Supreme Court denied respondent permission to appeal but granted the stay. By order of this court, respondent was granted leave to appeal both orders of Supreme Court.

The present case presents us once again with another instance of the continuing confusion over when a Statute of Limitations period commences in CPLR article 78 proceedings (see generally, Siegel, *The Dilemma of Determining When the Four-Month Statute of Limitations Starts to Run in an Article 78 Proceeding,* New York Law Digest No. 354 [June 1989]). Although the necessity for quick resolution of governmental

---

1. Petitioner's members are electricity consumers of Consolidated Edison Company of New York, Inc. and include the owners and managers of a large portion of the commercial real property located in New York County as well as a number of industrial concerns located in the metropolitan New York area.

2. From its brief, respondent concedes that June 19, 1986 is the date petitioner received the determination.

3. October 19, 1986 was a Sunday so that service on October 20, 1986 was timely if the statute began to run on June 19, 1986.

affairs mandates a short limitations period in these cases (CPLR 217; *see, Solnick v Whalen,* 49 NY2d 224, 232), courts are also careful not to arbitrarily apply a limitations period and "deny a party his day in court" *(Matter of Castaways Motel v Schuyler,* 24 NY2d 120, 127). Because the Statute of Limitations is an affirmative defense, the burden is upon respondent to establish the beginning date of the running of the statute *(see, State of New York v Peerless Ins. Co.,* 117 AD2d 370; *Doyon v Bascom,* 38 AD2d 645). In this case, there appears to be no precedent directly on point. Consequently, we must fashion a determination taking into consideration such statutes that apply, the philosophy expressed by the courts in interpreting Statute of Limitations questions and the practical problems being encountered by litigants and administrative agencies. We must also take into consideration the plight of lawyers who must practice according to our often confusing determinations. Our decision should be as pragmatic as possible.

Here, respondent's principal arguments are premised upon the assumption that the limitation period began to run on June 16, 1986, the date the determination became effective and was mailed to petitioner. In response, petitioner maintains that the proceeding was timely because the limitations period did not commence until June 19, 1986, the date it received the notice of the determination. Respondent relies on Public Service Law § 23 (1), which states, in part, that "[e]very order of [respondent] shall take *effect* at a time therein specified" (emphasis supplied). The issue here, however, is not when respondent's determination became effective but, rather, when the Statute of Limitations began to run. It is well established that the fact that a determination is final for purposes of its execution does not necessarily mean that on that date the Statute of Limitations begins to run *(see, Matter of New York Cent. R. R. Co. v Public Serv. Commn.,* 238 NY 132, 135, 136). Rather, since the Statute of Limitations is entirely a creature of statute *(see,* Siegel, NY Prac § 33, at 34), a determination of when the limitations period for this proceeding begins to run depends solely upon an interpretation of CPLR 217, which the parties concede is the governing statute herein *(see, e.g., Eve v Power Auth.,* 123 AD2d 532, 534).

CPLR 217 provides, in pertinent part, that: "a proceeding against a body or officer must be commenced within four months after the determination to be reviewed *becomes final and binding upon the petitioner"* (emphasis supplied). The

phrase "final and binding" has been interpreted to mean at the time the action has its impact upon the petitioner and when it becomes clear that he was aggrieved thereby *(see, e.g., Langham v State of New York,* 124 AD2d 405, 406, *lv denied* 69 NY2d 605). The Court of Appeals recently held that a party cannot be aggrieved by an administrative determination until he receives notice thereof *(Matter of Biondo v New York State Bd. of Parole,* 60 NY2d 832). Clearly, "a petitioner should not be held to have been dilatory in challenging a determination of which he was not aware" *(supra,* at 834).

■ Here, the plain language of Public Service Law § 23 (1) provides: "Every order of [respondent] shall be served upon every person or corporation to be *affected* thereby, either by personal delivery of a copy thereof; *or by mailing a copy thereof* * * * to the person to be affected thereby" (emphasis supplied). Petitioner did not receive notice of respondent's determination until the agreed-upon date of June 19, 1986 and, therefore, the principles of *Matter of Biondo v New York State Bd. of Parole (supra)* mandate that the Statute of Limitations commence from that date *(see also, Matter of Edmead v McGuire,* 67 NY2d 714). Respondent did make service in accordance with Public Service Law § 23 (1) by utilizing the alternative of service by mail. We believe that both methods should be placed on the same footing. To accomplish this and following the policy established by the Court of Appeals in *Matter of Biondo v New York State Bd. of Parole (supra),* we establish the date of notice as the date on which the decision was received. That was June 19, 1986.

Respondent contends that in making its decision it was acting in its quasi-legislative capacity. Because of that fact, it apparently argues that Public Service Law § 23 was not the controlling statute. Rather, it claims that it did everything required simply by mailing the decision and filing it with the Secretary of State. The thrust of its argument is that its quasi-legislative functions affect the general public in a manner similar to those of the Legislature and, therefore, it would be impossible to personally notify each interested party. Alternatively, respondent suggests that its alleged filing of its determination with the Secretary of State constituted sufficient constructive notice of it to commence the running of the time limitation.

In our view, the reasoning of respondent is flawed. As previously mentioned, Public Service Law § 23 (1) provides for actual notice to interested parties so there can be no question

of the necessity for notice. Respondent was unquestionably aware of this statutory mandate since it did mail a copy of its order to petitioner. It did not simply rely on the mere fact that it was effective on the date of issue and then take no further action. Respondent's constructive notice argument fails on several grounds. To begin with, it is clear that constructive notice is not an issue in this case at all. The record contains no proof that the decision was actually filed with the Secretary of State on June 16, 1986. It only contains a general statement that it was respondent's normal practice to do so. In the absence of proof that proper filing ever occurred in this case, we decline to consider the issue of whether filing with the Secretary of State constituted sufficient constructive notice.

In addition, we note that there is no proof in the instant record of publication of respondent's determination in the State Register or elsewhere such as to have given petitioner constructive notice. While we agree with respondent that publication in the State Register was not necessary to make a rule of the instant type (State Administrative Procedure Act § 102 [2] [a] [ii]) effective (see, State Administrative Procedure Act § 203 [1] [iii]), we note that publication is nonetheless necessary as a constitutional mandate for meaningful constructive notice to the public. The NY Constitution requires that a rule of an agency not only be filed in the office of the Department of State but also that the Legislature provide for the "speedy publication" of such rules (NY Const, art IV, § 8; see also, People v Cull, 10 NY2d 123). Accordingly, the wording of the Constitution, respondent's own statute (Public Service Law § 23 [1]) and the teaching of the Court of Appeals in Matter of Biondo v New York State Bd. of Parole (supra) persuade us that some form of meaningful notice is required before the Statute of Limitations can commence. The distinction between the exercise by respondent of its quasi-legislative powers as opposed to its adjudicatory powers is not meaningful under the circumstances of this case.

█ Finally, we find that Supreme Court properly granted petitioner's motion to stay enforcement of respondent's determination. In doing so, we reject respondent's contention that Supreme Court misapprehended the requisite showing necessary in order to obtain temporary injunctive relief in cases involving respondent. Public Service Law § 23 (2) provides, in relevant part, that: "No order staying or suspending an order of [respondent] fixing any rate, fare or charge * * * shall be

made by the supreme court otherwise than upon notice and after hearing; and if the order * * * is suspended, the order suspending the same shall contain a specific finding based upon evidence submitted to the court and identified by reference thereto, that great and irreparable damage would otherwise result to the petitioner and specifying the nature of the damage." Since the procedural requirements for obtaining a stay are specifically set forth in Public Service Law § 23 (2), this statute, rather than the more general requirements of CPLR 6301, is applicable in assessing the appropriateness of the instant stay (see, CPLR 101 [providing that the CPLR governs "except where the procedure is regulated by inconsistent statute"]). Accordingly, to obtain a stay pursuant to Public Service Law § 23 (2), there must be proof that there exist questions of substance for immediate consideration by the courts and that irreparable damage will result absent issuance of the stay (Matter of New Rochelle Water Co. v Maltbie, 249 App Div 378, 380; Matter of Brooklyn Union Gas Co. v Maltbie, 242 App Div 718, affd 266 NY 659; see, Matter of Consolidated Edison Co. v Maltbie, 299 NY 172, 175).

With this standard in mind, we conclude that petitioner has met its burden of proving both elements and the stay was properly granted. An examination of the petition shows that petitioner had adequately alleged compelling questions concerning respondent's choice of the per consumer formula over the per kilowatt-hour formula which require immediate resolution. Among other things, petitioner contends that the per consumer choice effectively forces large volume commercial and industrial electricity users to subsidize the energy used by residential consumers in violation of respondent's mandate against unreasonable preference (see, Public Service Law § 65 [2], [3]). Moreover, since the conditions under which respondent's choice of allocation method could, despite respondent's contentions otherwise, feasibly be triggered at any time, petitioner has made a sufficient showing of potential irreparable injury. While it is true that in the event payments are made and respondent's determination is overturned reparations could be ordered, it is notable that such restitution could not reasonably compensate for the user's current loss of use of its money or the costs and administrative inconveniences incurred by the necessity of switching allocation methods from one to another.

LEVINE, J. (dissenting). We respectfully dissent. The parties

agree that the determination challenged herein was made in a proceeding pursuant to respondent's authority to establish rates for electric utility service (see, Public Service Law § 66). As we read the record and the parties' contentions, it is also not in dispute that respondent performed all of the procedural formalities to make the determination herein effective on June 16, 1986 (including filing it with the Secretary of State), four months and four days before this proceeding was commenced. A long line of precedents clearly establishes that ratemaking is the exercise of an administrative agency's quasi-legislative function (see, Solnick v Whalen, 49 NY2d 224, 232; Matter of Consumer Protection Bd. v Public Serv. Commn., 97 AD2d 320, 324 [and cases cited therein]). To be sure, when a hearing is statutorily mandated for a rate-making proceeding, the order fixing the rate is "judicial", but this is only in the sense that the vehicle for judicial review will be by certiorari rather than a declaratory judgment action, a device to forestall premature review (see, Matter of Lakeland Water Dist. v Onondaga County Water Auth., 24 NY2d 400, 407, n 2). Whether the challenge to the administrative determination is by way of CPLR article 78 proceeding or declaratory judgment action is largely irrelevant for Statute of Limitations purposes, since the CPLR article 78 Statute of Limitations may be applied in an action for a declaratory judgment if the rights of the parties could have been resolved in an article 78 proceeding (see, Solnick v Whalen, supra, at 229-230; New York State Assn. of Counties v Axelrod, 150 AD2d 845). It is particularly noteworthy that rate determinations are characterized as an administrative rule-making function under the State Administrative Procedure Act (State Administrative Procedure Act § 102 [2] [a] [ii]).

Under the majority's decision, no distinction is drawn, in applying the Statute of Limitations, between quasi-judicial and quasi-legislative administrative determinations. The majority would hold that, in all cases, the limitations period does not commence to run until the person adversely affected by the administrative action receives actual notice of the determination. Under the zone of interest test for determining standing in a CPLR article 78 proceeding, the class of persons sufficiently aggrieved to challenge an agency's determination extends far beyond those who would be entitled to party status at the administrative stage (see, Matter of Dairylea Coop. v Walkley, 38 NY2d 6, 9-10). This means, for example, that a consumer of electric power who had not participated in

the instant proceeding before respondent but whose utility bill will be affected by respondent's determination will have four months from the date of actual notice within which to challenge the determination. Or, to illustrate in another context, the Statute of Limitations will not commence to run for a nursing home affected by a new Department of Health Medicaid rate reimbursement regulation until it has received actual notice of the promulgation of the regulation.

Apart from the obvious problems of proof of actual notice, it is readily apparent, where a legislative-type administrative determination is involved, having an impact far beyond the immediate parties at the administrative stage, that keying the commencement of the CPLR article 78 Statute of Limitations to the date of receipt of such notice by the challenger will effectively destroy the statutory policy behind the short limitations period that governmental operations should not be held hostage to stale claims *(see, Solnick v Whalen, supra,* at 232).

The majority's reliance on *Matter of Biondo v New York State Bd. of Parole* (60 NY2d 832) is misplaced. The *Biondo* case, a parole revocation matter, dealt with a typical quasi-judicial administrative determination in which the petitioner was an adversarial party in an administrative proceeding specifically involving the adjudication of his rights. Only one year before, the Court of Appeals in *Lenihan v City of New York* (58 NY2d 679) applied the four-month period of limitations without reference to actual notice in an equally typical quasi-legislative determination (the adoption of a civil service reclassification plan), holding that the period began upon the date of official promulgation. "In light of the 'final and binding' status of this plan *and its ready ascertainability,* the plaintiffs must be deemed aggrieved as of that time" *(supra,* at 681 [emphasis supplied]). The majority's requirement of actual notice as to belated challenges to quasi-legislative administrative actions is similarly inconsistent with this court's decisions in *Matter of Community Maternity Serv. v Gioia* (151 AD2d 808, 810) and *Matter of Abrams v Public Serv. Commn.* (96 AD2d 701, 702, *affd* 61 NY2d 718). It is also inconsistent with the State Administrative Procedure Act, which provides that judicial challenges to administrative rules for noncompliance with statutory procedures for adoption "must be commenced within four months from the effective date of such rule" (State Administrative Procedure Act § 202 [8]). Thus, in our view, the distinction between quasi-judicial determinations and those which are clearly quasi-

legislative continues to exist in applying the Statute of Limitations. Indeed, the distinction is necessary, lest the policy behind the short limitations period in CPLR article 78 cases be undermined.

Nor are we persuaded by petitioner's alternative argument, based upon *Matter of Ingham v Public Serv. Commn.* (116 AD2d 718, *appeal dismissed* 67 NY2d 1027, *lv denied* 68 NY2d 606), that would limit the requirement of actual notice to start the running of the period of limitations for quasi-legislative administrative determinations to when, as here, a hearing was statutorily mandated and the petitioner had been a party at the hearing. For nonparties, the limitation period would begin upon issuance of the determination. First, administrative determinations in proceedings where no hearing is required may be either quasi-judicial or quasi-legislative *(see,* Siegel, NY Prac § 558, at 778-779). The focus thus should be on the nature of the determination, not on whether the petitioner had party status at a hearing. Moreover, the actual notice mandated by Public Service Law § 23 (1) is to "every person * * * affected", not merely parties. Finally, to bind aggrieved persons who were *not* parties at the administrative level to the date of issuance, while giving parties to the administrative hearing the additional time to initiate a challenge from the date of receipt of actual notice seems to us to create the anomaly of affording greater protection to those most likely to be aware of the date of official promulgation of the agency's action than to those less likely to have such awareness.

For all the foregoing reasons, we would reverse and dismiss the petition herein as time barred.

MAHONEY, P. J., and CASEY, J., concur with HARVEY, J.; LEVINE and WEISS, JJ., dissent and vote to reverse in an opinion by LEVINE, J.

Orders affirmed, with costs.